Tucker, P.
This case turns upon the question whether a married woman can convey her separate estate by any other instrument, or in any other manner, than is prescribed by the marriage settlement.
An examination of the cases in the court of chancery in England results in the conviction that they are too unsettled and contradictory to afford any sure and satisfactory guide to us upon the subject. They have been reviewed with very great ability by chancellor Kent in the case of The Methodist Church v. Jaques, 3 Johns. Ch. Rep. 77. and by chancellor Hesaussure in the case of Ewing v. Smith, 3 Desauss. 417. It would be useless to attempt to add any thing to the full view thus presented of the english authorities by these conflicting opinions. It is somewhat remarkable that each should have been reversed by their respective appellate tribunals, which are thus as much in conflict as the chancellors themselves, although on different sides.
In this conflict of decisions, the question is presented to us for the first time in our courts, accompanied by the warning afforded by the repeated regrets of the ablest judges that so much countenance had. been given to the opinion that a feme covert may alien even her separate property in realty in a mode different from that prescribed by the deed of settlement. What course is it expedient for us to pursue ? The most profound respect has always been paid, and wisely paid, by this court to the able and well reflected opinions of british judges, whether anteriour or subsequent to the revolu *24 tion. The ability of the bench and of the bar, and the care and diligence which is bestowed on the consideration of every case, render their decisions our safest guides in the pursuit of the trae principles of oar jurispru¿ence) because it conforms so nearly with their own; and it must be remembered that though we search for precedents to discover and illustrate principles, the law depends at last upon principles, and. not upon the precedent. It is therefore of no importance from what fountain of light we derive our illumination, though we are only bound by the decisions of our own tribunals, where they have been frequent and uniform, and have definitively, settled either a canon of property, or the principles of contract, or some rule of practice. The decisions of the english judges are not binding upon us; and where those decisions are opposed to their own reason and judgment, we should look upon them rather as beacons to warn us from danger, than as land marks to guide us in our path.
It is admitted even by the english cases, that if the ' deed or will, by which the separate estate is created, expressly negatives any other mode of disposition than that which itself prescribes, the general power of disposition is taken away. See 3 Desauss. 447. Now it is very singular that the courts should in any of the cases have rejected the well established principle or maxim of law, expressio unius exclusio est dlterius. When the contracting parties expressly provide the manner in which the disposition shall be made, what else can be inferred than that the feme covert is to be confined to the mode prescribed ? In the present case the husband settles his own property on the wife, to her separate use during the coverture, with power of appointment by will, and for want of appointment, to her heirs, that is, in absolute property. Here the husband had a manifest interest in limiting and controlling the disposition of the property, by prohibiting the alienation during the *25 life of the wife. And according to the maxim cujus est 7 . 7. i,i-i i dare ejus est disponere, he had a right to prescrioe the terms on which, during the coverture, this right should be enjoyed and its disposition effected. He has done so, and has prescribed an appointment by will, as the mode of disposition. Confining the wife to this mode, the property would remain during his life for her use, and would thus contribute to aid him in sustaining the burdens of the married state. It moreover protects the property not only from his prodigality and the accidents of trade, but from her imprudent disposition of it to the prejudice both of himself and her, and secures to her a provision for her support in the event of her surviving him, which may fairly be presumed to have been a main design of the settlement. In the case of Richards v. Chambers, 10 Ves. 580, 586. sir William Grant observes, in reference to an antenuptial settlement of the wife’s property, “ The wife while sui juris means to make a provision for herself in the event of her surviving her husband. That is the case before the court. Such are the terms upon which alone she chooses to contract, while in a condition to exercise her free, unbiassed judgment. She wishes to put that out of her reach, and secure it from the effect of the influence and solicitation to which she may afterwards be exposed. Why should a court of equity, professing to watch over the interests of married women, say that a woman about to marry shall not be allowed to secure to herself this kind of protection? She has it, if the court will not interfere. She is deprived of it, if the court, upon her consent while coven, annuls the contract made for her benefit while sui juris.” And accordingly in that case he denied the power of the court, upon her privy examination, to transfer the property. The case of Lee v. Muggeridge, 1 Ves. & Beam. 118. decided upon the authority of Richards v. Chambers, and very much like it in all its traits, was of this nature. The trust was to the separate use of the wife for *26 the joint lives of herself and husband, and from the death of the husband, in case she should survive him, to her and her heirs or assigns, with a power to her to appoint by will if she should die in her husband’s lifetime, and in default thereof, then over. The court decided that the express provision that the property should belong absolutely to the wife in the event of her surviving, implied an exclusion of the power of appointment during coverture. If these two cases are not overruled, as I am inclined to believe they are not, then they are in fact decisive of this, as they are very parallel. But the truth is, the cases are so numerous and so conflicting that it is difficult to say whether they do or do not clash with some subsequent decisions. Considering the case at bar independent of them, we may at least observe that the remarks of the master of the rolls, just cited, are not only altogether just, but they apply not more fully to a settlement made by the husband of his wife’s property, than to a settlement made by him of his own property, obviously to place it beyond his control, — to secure to the wife the separate use of it, so that while the fund would be protected from his prodigality or losses in business, it might be applied by her to the joint comfort of them both during coverture, and be preserved in the event of her surviving her husband, as a competent support for herself. To secure these objects, she is confined to a disposition by will, which cannot take effect until her death; until the main purposes of the trust shall have been effected. I say confined; for I can in no other sense understand the parties in providing a particular species or mode of disposition only. Yet all these objects are to be frustrated by giving to her the power to dispose by deed, which was never contemplated. She may wantonly give away the personalty, with or without the consent of the husband; or she may, under his influence and persuasions, debar herself of the realty, by joining him in a sale of it, and *27 the proceeds may be swallowed up in the vortex of prodigality and ruin, against which it was designed to protect it. The provision thus made for her after his death will be gone, and the heirs for whom the estate was designed will be defeated also. They, it is true, have no claim as purchasers, no provision being here made for children. But if, according to the opinion in West v. West’s ex’ors, 3 Rand. 380. a wife cannot devise her separate real estate to the prejudice of her heirs, without an express power, even with the consent of her husband, there would seem to be strong reason for denying the power of disposition by deed, to the prejudice of the heir, unless an express power be given by the instrument under which she claims her separate property.
Upon the best reflection which I can give to this matter, I am of opinion that a feme covert, holding separate property in real estate by deed or will prescribing a peculiar mode of disposition, cannot dispose of it in any other mode, although the deed or will does not negative such other mode expressly.
It seems to be doubted whether the provisions of this settlement do not authorize an appointment by deed, as well as by will. But to give it this construction wc must interpolate words, and thus make a deed instead of construing one. Though the expressions are awkward, yet they are not insensible. It is provided that she shall have power, by a written instrument under hand and seal, attested by three witnesses, in the nature of an appointment of a will and testament, to dispose &c. and it is supposed that the word of should be or, so as to give the power of disposing by instrument sealed and attested, or a last will and testament. Even this is awkward, and we must, to avoid it, interpolate also the word by, so as to read or by last will Sfc. This, I think, is making very free with the deed. We make a disjunctive where there is none, and thus create two powers *28 out of one. I cannot assent to it, and the rather, be- . cause it the power to dispose by deed be given, it may be exercised without <privy examination and without the consent of the husband; thus on the one hand enabling t0 convey away from herself during the coverture the property received from her husband, without his consent, and on the other subjecting her to his influence, though the very object of the instrument was to place her above it. As to the instrument in the nature of a will being required to be attested and sealed, that might have been provided either through ignorance and want of skill in the scrivener, or it may have been designed to prevent her executing a mere olograph will without witnesses, which her husband might unduly procure from her. The precautions taken by herself and her friends would seem to have been well founded, when we see her, in one month after marriage, giving up her entire estate in the property to her husband. The more I consider the matter, the more am T satisfied that we should not meddle with the phraseology of the deed, but decide upon the-instrument as we find it.
The consequence of this opinion is, that the decree is erroneous and must be reversed, and the bill dismissed with costs.
Decree reversed, and bill dismissed.